UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ACCENT CONSULTING GROUP, INCORPORATED, and BRENDA MARIE STEPHENS, ) ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | Case No. 1:22-cv-01767-JMS-TAB |
| GREAT AMERICAN ASSURANCE COMPANY, ) ) ) ) | |
| Defendant. ) ) | |
| GREAT AMERICAN ASSURANCE COMPANY, ) ) ) ) | |
| Counter-Plaintiff, ) ) | |
| v. ) ) | |
| ACCENT CONSULTING GROUP, INCORPORATED, and BRENDA MARIE STEPHENS, ) ) ) ) ) | |
| Counter-Defendants. ) | |

**GREAT AMERICAN ASSURANCE COMPANY'S
COUNTER-COMPLAINT FOR DECLARATORY JUDGMENT**

Counter-Plaintiff, Great American Assurance Company ("Great American"), by and through its attorneys, and for its Counter-Complaint for Declaratory Judgment against the Counter-Defendants, Accent Consulting Group Incorporated ("Accent") and Brenda Marie Stephens ("Stephens"), hereby states as follows:

**THE PARTIES**

1. Plaintiff/Counter-Defendant Accent is a for-profit company registered to do business in the State of Indiana, with its principal place of business located in Marion County, Indiana, and is a citizen of the State of Indiana.

1

276185287v.1

2. Plaintiff/Counter-Defendant Stephens is a resident and citizen of the State of Indiana, residing in Marion County, Indiana.

3. At all relevant times, Stephens was the principal, president and registered agent of Accent.

4. Defendant/Counter-Plaintiff Great American is a corporation organized and existing under the laws of Ohio with its principal place of business located in Cincinnati, Ohio. Great American legally transacts insurance business in the State of Indiana and within the geographical jurisdiction of the United States District Court for the Southern District of Indiana.

## JURISDICTION AND VENUE

5. This is a Counter-Complaint for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201, and Fed. R. Civ. P. 57, for the purposes of determining a question of actual controversy between the parties as hereinafter more fully appears.

6. This Counter-Complaint is currently ripe for adjudication.

7. No Counter-Defendant resides in or is a citizen of the State of Ohio.

8. This Court has jurisdiction over this counter-complaint pursuant to 28 U.S.C. §1332 as the parties are citizens of different states and the amount in controversy exceeds $75,000.00 exclusive of costs and interests based on potential coverage obligations for the defense of, as well as the sum sought by Accent and Stephens in connection with the Complaint, which Plaintiffs claim Great American owes under the Policy.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

## BACKGROUND

### THE GREAT AMERICAN POLICY

10. Great American issued a claims made and reported Real Estate Professional Errors & Omissions Insurance Policy, number RAB3082190-21 to Named Insureds, 1st Class Realty Inc.

and Accent Consulting Group Incorporated, for the policy period of April 10, 2021 to April 10, 2022 (the "Policy"). A copy of the Policy is attached as **Exhibit A**.

11. The Policy has a $1,000,000 per claim and $2,000,000 aggregate limit of liability and is subject to a $2,500 per claim deductible.

12. The Policy is subject to the following Insuring Agreement, pursuant to Endorsement No. 2, which provides for coverage subject to the terms, conditions and exclusions of the Policy, on the following basis:

**I.    INSURING AGREEMENT**

The **Company** will pay on behalf of an **Insured** all sums in excess of the deductible that the **Insured** becomes legally obligated to pay as **Damages** and **Claim Expenses** as a result of a **Claim** first made against the **Insured** during the **Policy Period** or **Extended Reporting Period** by reason of an act or omission, including **Personal Injury,** in the performance of **Real Estate Professional Services** by the **Insured,** including any **Lock-box Claims** or **Open House Claims,** provided that:

A.  no such act or omission, or **Related Act or Omission,** was committed prior to the **Retroactive Date;**

B.  prior to the inception date of the first Policy issued by the **Company**, and continuously renewed, no **Insured** had a basis to believe that any such act or omission, or **Related Act or Omission**, might reasonably be expected to be the basis of a **Claim**; and

C.  the **Claim** must be reported in writing to the **Company** during the **Policy Period** or within sixty (60) days after the end of the **Policy Period** unless an **Extended Reporting Period** applies.

The **Company** has the right and duty to defend any **Claim** against an **Insured** even if the allegations of the **Claim** are groundless, false or fraudulent. Defense counsel may be designated by the **Company** or, at the **Company's** option, by an **Insured** with the **Company's** written consent and subject to the **Company's** guidelines.

13. The Policy defines "Claim" as follows:

**B.    "Claim"** means:

(1)   a written demand for money or services received by an **Insured**; or

(2)   a civil proceeding in a court of law, or arbitration proceeding, against an **Insured**, commenced by the service of summons or receipt of an arbitration demand;

3

276185287v.1

      arising out of an act or omission in the performance of **Real Estate Professional Services**.

14. The Policy defines "Disciplinary Action" as follows:

    **G.** **"Disciplinary Action"** means a proceeding before any state licensing board, local real estate board or other governmental body regulating professional conduct, alleging misconduct in providing **Real Estate Professional Services**; provided, however, **Disciplinary Action** does not include any criminal charges.

15. The Policy defined "Damages" as follows:

    **F.** **"Damages"** means any monetary judgment or award which an **Insured** is legally obligated to pay, including punitive or exemplary damages where insurable by law, and pre-judgment and post-judgment interest. **Damages** also means a monetary settlement to which the **Company** agrees on an **Insured's** behalf; provided, however, **Damages** do not include:

        (1) the return, restitution, reduction, compromise or refund of fees, commissions, expenses or costs for **Real Estate Professional Services** performed or to be performed by an **Insured** and injuries that are a consequence of any fees, commissions, expenses or costs charged by an **Insured**;

        (2) fines, penalties, forfeitures or sanctions;

        (3) the multiplied portion of any multiplied awards;

        (4) the cost of compliance with any order for, grant of, or agreement to provide non-monetary relief, including services or injunctive relief; or

        (5) any amounts uninsurable as a matter of law or public policy.

16. The Policy defines "Real Estate Professional Services", pursuant to Endorsement

No. 6, as follows:

      **W.** **"Real Estate Professional Services"** means services performed for others in an Insured's capacity as a(n):

        (1) real estate agent or broker;

        (2) leasing agent or **Property Manager**;

    (3)    appraiser or auctioneer of real property;

    (4)    expert witness, real estate consultant or counselor, provided such services are limited to the areas specified in items (1) through (3) above;

    (5)    **Short Term Escrow Agent**, **Referral Agent** or notary public; or

    (6)    member of a real estate accreditation, standards review or similar real estate board or committee;

provided that all necessary licenses or certifications are held by the **Insured** at the time of the act or omission giving rise to the **Claim**.

**Real Estate Professional Services** shall also include the above services performed for others by an **Insured** on or via the Insured's internet, e-mail, telecommunications or similar system.

**Real Estate Professional Services** does not include any services as a **Construction Manager**.

**Real Estate Professional Services** does not include any services in connection with or in any way related to the actual or attempted purchase of real property which includes any attempt to sell or offer to sell an option or assignment of an equitable interest in a contract held by any **Insured** or any assignment of contractual activities or rights to real property held by any **Insured**.

17. The Policy's definition of "Related Act or Omission" provides as follows:

    **Z.**    **"Related Act or Omission"** means all acts or omissions that are logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision.

18. The Policy's definition of "Insured" provides, in pertinent part, as follows:

    **M.**    **"Insured"** means:

    (1)    the **Named Insured**;

    (2)    any person who is a past or present employee, partner, principal, shareholder, officer, director, member, or independent contractor and any of their employees, but only for **Claims** arising from **Real Estate Professional Services** performed on behalf of the **Named Insured**;

5

276185287v.1

19. 1st Class Realty Inc. and Accent are Named Insureds under the Policy.

20. Stephens is not a Named Insured under the Policy

21. Stephens alleges she is an Insured under the Policy.

22. The Declarations page of the Policy states, in bold, capital letters:

**THIS POLICY APPLIES ONLY TO THOSE CLAIMS THAT ARE FIRST MADE AGAINST AN INSURED DURING THE POLICY PERIOD. ALL CLAIMS MUST BE REPORTED IN WRITING TO THE COMPANY DURING THE POLICY PERIOD OR WITHIN SIXTY (60) DAYS AFTER THE END OF THE POLICY PERIOD.**

23. Pursuant to Section VI.B., as amended by Endorsement No. 9, the Policy provides:

> **B.  Disciplinary Action**
>
> The **Company** will reimburse an **Insured** for reasonable attorneys' fees, costs and expenses incurred in responding to a **Disciplinary Action** that is first received by an **Insured** and reported in writing to the **Company** during the **Policy Period** by reason of an act or omission in the performance of **Real Estate Professional Services**, provided that no act or omission alleged in the **Disciplinary Action** is the same as, or is a **Related Act or Omission** with, an act or omission alleged in a **Claim** made prior to the **Retroactive Date** or a notice of circumstance or potential claim given to a prior insurer. The maximum amount payable shall be $2,500 per **Disciplinary Action** and $25,000 for all **Disciplinary Actions** during the **Policy Period**, regardless of the number of **Disciplinary Actions**. The **Company** shall not be obligated to defend any **Disciplinary Action**, or pay any fine, penalty or award resulting from any **Disciplinary Action**.

**THE UNDERLYING *DISCIPLINARY ACTION***

24. Upon information and belief, on or about November 1, 2021, the State of Indiana brought a complaint against the real estate appraiser license of Stephens before the Real Estate Appraiser Licensure and Certification Board, styled: *IN THE MATTER OF THE LICENSE OF BRENDA MARIE STEPHENS LICENSE NO(S).: CR60300559 (Active)*, Cause No.: 2021 REAB 0002 (the "*REAB Complaint*"). A copy of the *REAB Complaint* is attached as **Exhibit B**.

6

276185287v.1

25. The *REAB Complaint* alleges that, on October 22, 2020, Stephens performed an appraisal (the "Appraisal") regarding real property located at 18178 Laurel Rd, Connersville, Indiana 47331 (the "Subject Property"). (*See* Ex. B at ¶4).

26. The *REAB Complaint* alleges that, on or about November 4, 2020, Jason and Bridget Kersey ("Complainants") filed a consumer complaint with the Office of the Indiana Attorney General ("OAG") regarding the Appraisal (the "*Original Complaint*"). (*See* Ex. B at ¶5).

27. The *REAB Complaint* alleges that, on November 19, 2020, the OAG issued a letter to Stephens in connection with the *Original Complaint* and requested, in relevant part, that Stephens send the OAG the following items from her work file within twenty (20) days:

   a. A true color copy of the original Appraisal report or Appraisal review report, as submitted to the client;

   b. The Appraisal order form, contract, or phone orders for services;

   c. MLS printout(s) or references for Subject Property and comparable sales or rentals;

   d. A copy of the purchase or sales agreement for the Subject Property;

   e. Tax assessment records for the Subject Property and comparable properties used;

   f. Working notes, sketches, telephone messages, faxes, emails, assessor data or other correspondence regarding the Subject Property;

   g. Documents generated and/or received after submission of the Appraisal report to the client, to include notes, emails, or other correspondence;

   h. Copies of previous or subsequent appraisals completed on the Subject Property that Stephens may have reviewed;

   i. Stephens' written response to the allegations in the *Original Complaint*;

   j. A completed Document Checklist attached to the OAG letter; and

   k. Any other relevant documents.

(*See* Ex. B at ¶6(a)-(k)).

28. On November 23, 2020, Stephens emailed the OAG investigator the requested documents from her file, and provided a letter in response to the *Original Complaint*, explaining the manner in which the Appraisal was ordered and conducted (the "Stephens Letter"). (*See* Ex. B at ¶¶ 7-8).

29. The Stephens Letter stated the following:

   a. The Appraisal was ordered as a desk top evaluation due to Covid 19, and extraordinary assumptions are made for desk top evaluations.

   b. Disclaimers were included in the Appraisal.

   c. Complainants could have told the lender to order a full appraisal but did not.

   d. Stephens completed the report based on data available from the market using previous data.

   e. The evaluation used lender guidelines and interpretation of data provided on the internet and the MLS.

   f. Lenders can order a full appraisal when they disagree with the restricted.

   g. The accessor described the architectural style as "log."

   h. If a client disagreed with the value, the client should've contacted her lender and asked for a reconsideration of value.

   i. The value was based on data in the market that Stephens believes supports a credible opinion of value.

(*See* Ex. B at ¶8(a)-(i)).

30. The *REAB Complaint* alleges that, on August 17, 2021, the OAG emailed Stephens at the address she has on file with Indiana Professional Licensing Agency ("IPLA"), to arrange an

investigative interview regarding the Appraisal; however, Stephens did not respond to the request. (*See* Ex. B at ¶9).

31. The *REAB Complaint* alleges that, on August 20, 2021, the OAG emailed Stephens again to arrange an investigative interview; however, Stephens did not respond to the request. (*See* Ex. B at ¶10).

32. The *REAB Complaint* alleges that, on August 25, 2021, the OAG called Stephens at the phone number she has on file with the IPLA, to arrange an investigative interview; however, Stephens did not answer. A voicemail was left, but Stephens did not follow up with the request. (*See* Ex. B at ¶11).

33. On or about November 1, 2021, the *REAB Complaint* was filed.

34. The *REAB Complaint* is based on the allegations of the *Original Complaint* and asserts the following:

    a. Stephens provided an appraisal of real estate property owned by the Complainants and under contract for sale.

    b. The buyer's lender contracted with Stephens to perform an appraisal.

    c. The Appraisal was inaccurate in accessing the value of the Subject Property due to Stephens performing a "desktop appraisal" and not coming to the home.

    d. Stephens described the home as being "log sided and brick front and trim," however the home is "full log construction with flat-stone laid up chimney."

    e. Stephens noted the home as suburban when it is rural and farm ground.

    f. Stephens used neighboring county properties as comparable sales despite there being local properties available to Stephens.

    g. Stephens serves counties situated in central Indiana, but the Subject Property was located in southern Indiana near the Ohio border.

      h.   The home was appraised 20% below the contracted sales price and the sale was lost and the pending contingent purchase.

(*See* Ex. B at ¶5(a)-(h)).

35.    The *REAB Complaint* brings two Charges against Stephens in connection with the Appraisal: (1) Count I – for knowingly violating the Uniform Standards of Professional Appraisal Practice ("USPAP") Competency Rule; and (2) Count II – for continuing to practice after Stephens had become unfit to practice due to professional incompetence, as evidenced by Stephens' USPAP Competency Rule violation. (*See* Ex. B at ¶¶ 18-20).

36.    Based on the above, the *REAB Complaint* seeks the following relief against Stephens: (1) disciplinary sanctions, as authorized by Ind. Code § 25-1-11-12; (2) a directive that she pay a fee in the amount of Five Dollars ($5.00) to the Health Records and Personal Identifying Information Protection Trust Fund, pursuant to Ind. Code § 4-6-14-10(b); (3) a directive that she immediately pay all of the costs incurred in the prosecution of this case, as authorized by Ind. Code 25-1-11-18; and (4) any other relief that is just and proper. (*See* Ex. B at p. 6).

37.    In November 2021, Stephens provided notice to Great American of the *REAB Complaint* and the *Original Complaint* (collectively, the "*Disciplinary Action*").

38.    Stephens sought coverage under the Policy for the *Disciplinary Action*.

## COUNT ONE
### Failure to Trigger Insuring Agreement – No Claim Made Against Insured

39.    Great American repeats and re-alleges each and every allegation set forth in paragraphs 1 through 38.

40.    The Policy's Insuring Agreement is limited to claims that are first made against an insured during the policy period or extended reporting period and reported in writing to Great American within sixty (60) days after the end of the policy period.

41. In relevant part, the Policy defines "claim" to mean either a written demand for money or services received by an insured or a civil proceeding in a court of law against an insured commenced by the service of summons, arising out of an act or omission in the performance of "real estate professional services."

42. Neither the *Original Complaint* nor the *REAB Complaint* were a demand for money or services on Stephens or Accent.

43. Neither the *Original Complaint* nor the *REAB Complaint* were a civil proceeding in a court of law against Stephens or Accent.

44. Neither the *Original Complaint* nor the *REAB Complaint* are a "claim", as defined by the Policy.

45. As such, neither the *Original Complaint* nor the *REAB Complaint* (collectively, the *Disciplinary Action*) trigger the Insuring Agreement of the Policy.

46. Thus, coverage under the Insuring Agreement of the Policy is precluded for the *Disciplinary Action*.

47. The lack of coverage under the Insuring Agreement of the Policy constitutes a case or controversy and Great American anticipates a dispute on this issue.

48. Therefore, Great American is entitled to a declaratory judgment as to the lack of coverage under the Insuring Agreement of the Policy for the *Disciplinary Action*.

WHEREFORE, Counter-Plaintiff Great American Assurance Company respectfully requests that this Court:

(A) enter judgment and a declaration that the Policy does not provide defense or indemnity coverage to Accent for the *Disciplinary Action*;

(B) enter judgment and a declaration that the Policy does not provide defense or indemnity coverage to Stephens for the *Disciplinary Action*;

(C)      award Great American its costs incurred herein; and

(D)      award Great American all other relief to which it may be entitled.

## COUNT TWO
## Failure to Satisfy a Condition Precedent to Supplementary Payments Coverage

49. Great American repeats and re-alleges each and every allegation set forth in paragraphs 1 through 38.

50. Pursuant to Section VI.B., as amended by Endorsement No. 9, Great American will reimburse an insured for reasonable attorneys' fees, costs and expenses incurred in responding to a "Disciplinary Action", as defined by the Policy, that is first received by an insured and reported in writing to Great American during the Policy Period.

51. The *Disciplinary Action* against Stephens was a proceeding brought before a state licensing board, local real estate board or other governmental body regulating professional conduct.

52. The *Disciplinary Action*, originally filed on November 4, 2020, alleged misconduct against Stephens in connection with her provision of appraisal services to others, and is a "Disciplinary Action" as defined by the Policy.

53. Stephens first received notification of the *Disciplinary Action* on or around November 23, 2020.

54. On November 23, 2020, Stephens issued a written letter to the OAG responding to the allegations in the *Disciplinary Action*, and provided certain requested documents from her file.

55. The Policy provides a Policy Period of April 10, 2021 to April 10, 2022.

56. The *Disciplinary Action* was not first received by an insured and reported in writing to Great American during the Policy Period, and thus, fails to satisfy a condition precedent under the "Disciplinary Action – Supplemental Payments" section of the Policy.

57. Thus, there is no coverage under the "Disciplinary Action – Supplemental Payments" section of the Policy.

58. This lack of coverage constitutes a case or controversy and Great American anticipates a dispute on this issue.

59. Therefore, Great American is entitled to a declaratory judgment as to the lack of coverage under the "Disciplinary Action – Supplemental Payments" section of the Policy for the *Disciplinary Action*.

WHEREFORE, Counter-Plaintiff Great American Assurance Company respectfully requests that this Court:

(A) enter judgment and a declaration that the *Disciplinary Action* against Stephens was a **Disciplinary Action**, as that term is defined by the Policy, first received by an **Insured** before April 10, 2021;

(B) enter judgment and a declaration that the Policy does not provide supplemental payments coverage to Accent or Stephens for the *Disciplinary Action*;

(C) enter judgment and a declaration that no coverage is afforded for the *Disciplinary Action* under the Policy;

(D) award Great American its costs incurred herein; and

(E) award Great American all other relief to which it may be entitled.

Dated: October 4, 2022　　　　　　　　　　　Respectfully Submitted,

By: */s/ Michael Kreppein*
　　One of the Attorneys for Great
　　American Assurance Company

Michael Kreppein, 22430-64
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
233 E. 84th Drive – Park Tower, Suite 201
Merrillville, IN 46410
Telephone: (219) 525-0560
Michael.Kreppein@wilsonelser.com

13

276185287v.1

## CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2022, a true and correct copy of the above and foregoing instrument was served electronically on all counsel of record.

Rafael Ramirez, 18847-49
Ramirez Law Office, P.C.
P.O. Box #219
Rio Hondo, TX 78583
Telephone: (317) 951-8538
Facsimile: (317) 951-8539
Preferred: (317) 679-5975
rafael@ramirez-law.com

By: */s/ Michael Kreppein*
One of the Attorneys for Great American Assurance Company

276185287v.1