UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ACCENT CONSULTING GROUP, INCORPORATED, BRENDA MARIE STEPHENS, | ) ) ) | |
| *Plaintiffs*, | ) ) | |
| v. | ) ) | No. 1:22-cv-01767-JMS-CSW |
| GREAT AMERICAN ASSURANCE COMPANY, | ) ) ) | |
| *Defendant.* | ) ) | |
| GREAT AMERICAN ASSURANCE COMPANY, | ) ) ) | |
| *Counter Claimant*, | ) ) ) | |
| v. | ) ) ) | |
| ACCENT CONSULTING GROUP, INCORPORATED, BRENDA MARIE STEPHENS, | ) ) ) | |
| *Counter Defendants.* | ) ) ) ) | |

## ORDER

Plaintiff Brenda Marie Stephens is a real-estate appraiser and is the President of Plaintiff Accent Consulting Group (collectively, "Ms. Stephens").  Ms. Stephens demanded that Defendant Great American Assurance Company ("Great American") provide legal representation for her under an insurance policy (the "Policy") it issued related to a professional disciplinary hearing and Great American refused.  After Ms. Stephens successfully defended herself in the hearing, incurring legal costs, she and Accent Consulting initiated this litigation against Great American. With leave of Court, Great American filed a counterclaim against Ms. Stephens and Accent

1

Consulting, [Filing No. 73], alleging that Ms. Stephens's insurance application contained a misrepresentation — specifically, that she was not subject to any complaint, investigation, or disciplinary hearing even though she was. Great American claims it relied on the misrepresentation. Now before the Court are Cross-Motions for Summary Judgment. [Filing No. 53; Filing No. 64.] Great American has also requested that the Court strike the testimony of Ms. Stephens's expert, Professor William Warfel, [Filing No. 67 at 28-32.] Each motion is ripe for the Court's review.

# I.
## MOTION TO STRIKE EXPERT TESTIMONY

In Great American's Cross-Motion for Summary Judgment, it requests that the Court strike the expert testimony of Ms. Stephens' expert, Professor William Warfel. [Filing No. 67 at 28.] Because the Court's rulings on the motion to strike testimony impact the evidence the Court can consider on summary judgment, the Court turns first to that motion.

Great American argues that Professor Warfel's expert opinion is not a "fact[]." [Filing No. 67 at 28.] Great American further argues that the expert opinion is "not relevant, reliable, appropriate or admissible" under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). [Filing No. 67 at 28.] Great American argues that Professor Warfel is not "qualified" to offer expert opinions on real estate appraisal disciplinary actions and "merely attempts to . . . explain the legal effect of" the Policy. [Filing No. 67 at 28-32.]

Ms. Stephens did not file any response to Great American's Cross Motion for Summary Judgment, which contains the motion to strike the expert testimony. According to Great American, Ms. Stephens' counsel specifically "advised the Court that [her] decision not to file any response was intentional and that [she] did not intend on opposing Great American's" Cross Motion for

Summary Judgment, nor did she "intend on filing any reply in support of [her] Motion for Summary Judgment."   [Filing No. 80 at 1.]   Well after the deadline, Ms. Stephens filed an unauthorized "sur-reply."   [Filing No. 82.]   The sur-reply does not address the motion to strike expert testimony and instead argues that Great American has not demonstrated prejudice from allegedly late notice of her insurance claim.   [Filing No. 82 at 2-3.]

As Great American describes, Professor Warfel's expert opinion is largely a rehashing of Ms. Stephens's arguments.   For example, Professor Warfel opines that "[t]he trigger of coverage issue must be evaluated within the context of the insuring agreement," that "[t]he underlying claim against [Ms.] Stephens became ripe once The Office of the Indiana Attorney General filed its original Formal Complaint against her," and that "an expectation . . . that an insured . . . must report to the . . . carrier . . . all Consumer Complaints against the insured . . . is entirely unreasonable." [*E.g.*, Filing No. 53-11 at 9-11].   No party in this case appears to dispute the actual language of the Policy, and the interpretation of a contract is a question of law for the Court, so the Court has no need for Professor Warfel's opinion.   As the Seventh Circuit has held, "[a]bsent any need to clarify or define terms of art, science, or trade, expert opinion testimony to interpret contract language is inadmissible." *Delta Min. Corp. v. Big Rivers Elec. Corp.*, 18 F.3d 1398, 1402 (7th Cir. 1994). Accordingly, the Motion to Strike the Expert Opinion of Professor William Warfel, [Filing No. 67 at 28-32], is **GRANTED**.

## II.
## CROSS-MOTIONS FOR SUMMARY JUDGMENT

### A.     Standard of Review

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law.   *See* Fed. R. Civ. P. 56(a).   As the current version of Rule 56 makes clear,

3

whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits.  Fed. R. Civ. P. 56(c)(1)(A).  A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1)(B).  Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated.  Fed. R. Civ. P. 56(c)(4).  Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment.  Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision.  A disputed fact is material if it might affect the outcome of the suit under the governing law.  *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009).  In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative.  *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005).  Fact disputes that are irrelevant to the legal question will not be considered.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

"On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events.  *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003).  The moving party is entitled to summary judgment if no reasonable factfinder could return a verdict for the nonmoving party.  *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009).  The court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor.  *Darst v. Interstate Brands Corp.*, 512 F.3d

4

903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them." *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010). "To determine whether genuine issues of material fact exist, we ask if 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 449 (7th Cir. 2013).

"The existence of cross-motions for summary judgment does not, however, imply that there are no genuine issues of material fact." *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers, Loc. Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003). Specifically, "[p]arties have different burdens of proof with respect to particular facts; different legal theories will have an effect on which facts are material; and the process of taking the facts in light most favorable to the non-movant, first for one side and then for the other, may highlight the point that neither side has enough to prevail" on summary judgment. *Id.* at 648.

B.    **Statement of Facts**

The following factual background is set forth pursuant to the standard detailed above.  The facts stated are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to "the party against whom the motion under consideration is made," in this case, beginning with Ms. Stephens.  *Premcor USA, Inc. v. Am. Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

*1.    The Initial Insurance Policy*

Ms. Stephens is an Indiana licensed appraiser and is the President of co-Plaintiff Accent Consulting Group.  [Filing No. 53 at 3.]  Using insurance broker Landy Insurance, Ms. Stephens purchased a claims-made and reported Real Estate Professional Errors and Omissions Insurance Policy (the "Policy").  [Filing No. 9 at 4; Filing No. 64-1 at 2.]  To receive coverage, the Policy required Ms. Stephens to report in writing any claims or disciplinary actions against her during the policy period or extended reporting period.  [Filing No. 64-1 at 5; 15.]  Although the Policy provided for reimbursement of "reasonable attorneys' fees, costs and expenses incurred in responding to a Disciplinary Action," the Policy specifically stated that Great American "shall not be obligated to defend any Disciplinary Action."  [Filing No. 64-1 at 15.]  The covered reimbursement costs for Disciplinary Actions were limited to $2,500.  [Filing No. 64-1 at 15.]  The Policy also stated that "any material representation . . . by the . . . Insured or the Insured's agent will render the Policy null and void and relieve" Great American from all liability.  [Filing No. 64-1 at 38.]  The Policy ran from April 2020 to April 2021.  [Filing No. 9 at 4; Filing No. 64-1 at 2.]

*2.    The Consumer Complaint*

During the first Policy period, in October 2020, Ms. Stephens agreed to and did perform a "desktop appraisal" of an Indiana single-family home (the "Property").  [Filing No. 53-4; Filing

No. 53-5.] A "desktop appraisal" is one that is virtual, not requiring a "physical inspection of the property by the appraiser." [Filing No. 53-5 at 3.]

The next month, in November 2020, the Property's owners filed a complaint (the "Consumer Complaint") against Ms. Stephens with the Office of the Indiana Attorney General ("Indiana OAG"). [Filing No. 53-6.] In the Consumer Complaint, the homeowners alleged that "[t]he appraisal [was] egregiously inaccurate in assessing value of the property," reported an "inaccurate" "description of the property," and appraised the home based on "comparable sales . . . from a neighboring county, widely known to have a depressed economy and were not similar in type or value." [Filing No. 53-6 at 3.] The Consumer Complaint alleged that Ms. Stephens' appraisal was "20% below contracted sales price and thus the sale was lost." [Filing No. 53-6 at 3.] The Consumer Complaint alleged that "Ms. Stephens did not act in good faith nor with professionalism from a licensed real estate appraiser." [Filing No. 53-6 at 3.] The Consumer Complaint demanded an "investigation of [Ms. Stephens'] appraisal and practices," and "disciplinary action." [Filing No. 53-6 at 3.]

Later that month, on November 19, 2020, the Indiana OAG "sent a letter" to Ms. Stephens regarding the Consumer Complaint to Ms. Stephens and requested several documents underlying her disputed appraisal. [Filing No. 73-1 at 3.] A few days later, Ms. Stephens "emailed the [Indiana] OAG investigator the requested documents." [Filing No. 73-1 at 4.] Ms. Stephens did not report the Consumer Complaint or Indiana OAG investigation to Great American. [Filing No. 53 at 5.]

### 3. *The Insurance Renewal Application*

Less than six months after the Complaint and Indiana OAG correspondence, on March 16, 2021, Ms. Stephens applied to renew Accent's insurance Policy with Great American. The Renewal Application asked whether Ms. Stephens was "aware of any of the following in the past

12 months: . . . [c]omplaint, disciplinary action, investigation or license suspension/revocation by any regulatory authority." [Filing No. 73-3 at 3.] She answered "no." [Filing No. 73-3 at 3.] The Renewal Application required Ms. Stephens to affirm that "there has been no . . . misstatement[]." [Filing No. 73-3 at 5.] Ms. Stephens agreed and provided her signature.  [Filing No. 73-3 at 5.]

    *4.*    *The Complaint Before the Real Estate Appraiser Licensure and Certification Board*

Later that autumn, on November 1, 2021, the Indiana OAG filed a complaint against Ms. Stephens before the Real Estate Appraiser Licensure and Certification Board ("REAB"). Complaint, *In the Matter of the License of Brenda Marie Stephens License No(s): CR60300559 (Active)* (REAB No. 0002, Nov. 1, 2021) (hereinafter "REAB Complaint").  The REAB Complaint alleged that the Indiana OAG tried to convene an investigative interview with Ms. Stephens, first emailing, then calling, then leaving a voicemail, but to no avail.  [Filing No. 73-1 at 5-6.]  As of the filing of the REAB Complaint, the Indiana OAG alleged that Ms. Stephens "still ha[d] not followed up with the OAG's request for an investigative interview regarding" her disputed appraisal.  [Filing No. 73-1 at 6.]  Pursuant to the Consumer Complaint, the Indiana OAG alleged in the REAB Complaint that Ms. Stephens violated the Uniform Standards of Professional Appraisal Practice ("USPAP") by conducting an appraisal below the USPAP's rules of competency. [Filing No. 73-1 at 5-6.]  The OAG further alleged that Ms. Stephens "continued to practice although [she] ha[d] become unfit to practice due to professional incompetence."  [Filing No. 73-1 at 7.] For those alleged infractions, the Indiana OAG demanded "disciplinary sanctions." [Filing No. 73-1 at 7.]

    *5.*    *The Request for Insurance Coverage*

After the filing of the REAB Complaint, Ms. Stephens requested legal representation from Great American.  [Filing No. 53 at 6.]  Great American denied the application because Ms.

Stephens received the Consumer Complaint in November 2020, during the first Policy period, but did not report it until November 2021, the following year during the renewed Policy period. [Filing No. 53-8 at 3.] Thus, Great American stated that Ms. Stephens was late in reporting and did not tender the proper notice within the Policy period. [Filing No. 53-8 at 3.] Additionally, Great American stated that the REAB proceedings did "not constitute a claim as defined by the Policy," and were instead a "disciplinary action," so Ms. Stephens could not invoke the extended reporting period. [Filing No. 53-8 at 4-5.] Ms. Stephens retained her own counsel and ultimately prevailed before the REAB, which determined that in performing the desktop appraisal, she "was at least minimally competent." [Filing No. 64-4 at 118-19.]

       *6.     This Litigation*

In August 2022, Ms. Stephens sued Great American in Marion Superior Court, and Great American later removed the matter to this Court on the basis of diversity jurisdiction. [Filing No. 1; Filing No. 1-1.] Ms. Stephens alleges that in defending herself before the REAB, she was "forced to seek counsel and incurred debt," "substantially curtailed [her] appraisal intake cases in order to seek counsel and prepare [her] defense," and lost "substantial profits and business opportunities." [Filing No. 1-1 at 12.] Because she was denied insurance coverage, she sued Great American for breach of contract and bad faith. [Filing No. 1-1 at 12-15.]

Later in the litigation and following receipt of certain discovery response from Ms. Stephens, Great American moved to file a Counter-Complaint or in the Alternative Amend Affirmative Defenses, to allege that Ms. Stephens made a misrepresentation on her insurance renewal application when she denied that there were any pending disciplinary investigations against her. Great American sought to add a claim for rescission of the Policy. [Filing No. 52.] Great American noted Ms. Stephens's admission that "as of November 23, 2020, [she] had knowledge of, and was aware of, the allegations of the" Consumer Complaint. [Filing No. 52 at

4.]  The Court granted the motion to amend, noting that Ms. Stephens "fail[ed] to address or even allege diligence or delay on the part of Great American," and "[n]owhere in [her] twenty-two paged response [was] there any analysis under the rules applicable" to the motion.  [Filing No. 71 at 4-5.]  The parties filed Cross-Motions for Summary Judgment, and in a later order, the Court ordered supplemental briefing on the issue of misrepresentation.  [Filing No. 92 at 10-11.]

### C.   Discussion

Based on its Counter-Complaint for Declaratory Judgment, [Filing No. 73,] Great American seeks to rescind the policy in its supplemental briefing.  As there can be no coverage under a rescinded policy the Court will address that claim first.

*1.    Misrepresentation on the Insurance-Renewal Application and Rescission*

Great American argues in its Supplemental Brief in Support of Cross-Motion for Summary Judgment that by the time Ms. Stephens had submitted her Policy Renewal Application, she was already aware of the allegations in the Consumer Complaint and the Indiana OAG's investigation against her.  [Filing No. 93 at 6.]  Yet, Great American argues, Ms. Stephens answered on her Renewal Application that she was not aware of any "[c]omplaint, disciplinary action, investigation or license suspension/revocation by any regulatory authority."  [Filing No. 93 at 6-7.]  Great American argues that Ms. Stephens's answer amounted to misrepresentation.  [Filing No. 93 at 8.]  Great American states through the testimony of one of its Vice Presidents, that it "had no knowledge" of Ms. Stephens' alleged misrepresentation, that it "relied on the answers [Ms. Stephens] provided," and that "if [Ms.] Stephens had disclosed the Consumer Complaint, the Indiana OAG's investigation, and/or [her] communications with the Indiana OAG regarding the investigation," it "would have issued the Policy on materially different terms and charged a higher premium."  [Filing No. 93 at 7-8 (citing Filing No. 93-1)].  Great American states the under the Policy, "[a]ny material representation or concealment by the Named Insured or the Insured's agent

10

will render the Policy null and void and relieve the Company from all liability herein." [Filing No. 93 at 3.] Consequently, Great American argues that Ms. Stephens's answer was "false" and "material," entitling it to "judgment, as a matter of law, that it may rescind the Policy." [Filing No. 93 at 9-14.]

Ms. Stephens argues in her supplemental briefing that the Consumer Complaint's dates should not be considered regarding the dispute over misrepresentation because the Consumer Complaint "had absolutely nothing to do with Stephens." [Filing No. 94 at 11.] According to Ms. Stephens, it was the "lender, who relied [on] the appraisal [Ms.] Stephens prepared, no one else." [Filing No. 94 at 11.] Ms. Stephens asserts she owed no duty to the consumers whose home she was appraising and that the Consumer Complaint "could not possibly arise to the level of an investigation reasonably expected to result in a claim in which Great American would have to cover pursuant to the [P]olicy." [Filing No. 94 at 11.] As evidence of this, Ms. Stephens points to the fact that Great American "admits" that the Consumer Complaint "did not qualify as a claim under the [P]olicy." [Filing No. 94 at 12.] Ms. Stephens argues that, although Great American alleges that it would have charged a higher premium "had it known of the [C]onsumer [C]omplaint," Great American actually "did not renew the policy" at all. [Filing No. 94 at 14.] Ms. Stephens alleges that ultimately, Great American's rationale for not renewing the Policy was "vague at best" given that the "misrepresentation claim wasn't introduced" until this Court's litigation and that Great American simply "abandoned" her, leaving her to "obtain[] coverage elsewhere." [Filing No. 94 at 13.]

Great American argues in its Reply in Support of Supplemental Brief that "(1) [Ms.] Stephens' answer [on] the Renewal Application was false because, prior to executing the application . . . [Ms.] Stephens knew about the Consumer Complaint and the Indiana OAG's

resulting investigation; and (2) this false statement was material to the risk insured by the Policy." [Filing No. 97 at 1.]  Great American notes that even if "[Ms.] Stephens believed her answer was true," under Indiana law, "her subjective belief is irrelevant."  [Filing No. 97 at 4.]  Great American argues that because Ms. Stephens's "false statement and nondisclosure was material," it is "entitled to judgment as a matter of law."  [Filing No. 97 at 7.]

When the Court exercises diversity jurisdiction over an action, it is "obliged to apply state law to the substantive issues in the case." *Lodholtz v. York Risk Servs. Grp., Inc.*, 778 F.3d 635, 639 (7th Cir. 2015) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).  The parties do not dispute that Indiana law governs this action.  Accordingly, this Court must "apply the law that would be applied by the Indiana Supreme Court." *Lodholtz*, 778 F.3d at 639.  "If the Indiana Supreme Court has not spoken on the issue, [the Court] generally treat[s] decisions by the state's intermediate appellate courts as authoritative, unless there is a compelling reason to think that the state supreme court would decide the issue differently." *Id.*

Indiana law provides at least two definitions of "material misrepresentation."  "Under one definition, a misrepresentation or omission is 'material' if knowledge of the truth would have caused the insurer to refuse the risk or to charge a higher premium for accepting the risk." *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 672 (Ind. 1997) (citation omitted).  Alternatively, if "rescission is attempted after a loss has been incurred," "coverage of the incurred loss would be voided if the misrepresentation affected that risk" represented by the loss.  *Id.* at 673.  Both definitions encompass a "misrepresentation . . . innocently made," and both definitions include a misrepresentation which leads to a loss for which the insured later seeks coverage.  *Id.*  Even if an insured's "agent incorrectly fills out the application, so long as the potential insured had an opportunity to review the application and signs it," the person held responsible for the

12

misrepresentation is the insured.  *Brennan v. Hall*, 904 N.E.2d 383, 387 (Ind. Ct. App. 2009).  Such rules vindicate the "the insurer's right to know the full extent of the risk it undertakes when an insurance policy is issued."  *Guzorek*, 690 N.E.2d at 672.

In this case, the Consumer Complaint led directly to the Indiana OAG investigation, [Filing No. 73-1 at 3]; the Indiana OAG investigation led directly to the REAB Complaint.  [Filing No. 73-1 at 8 (complaint filed by the Indiana OAG)].  A direct line is easily traced from the Consumer Complaint to the REAB Complaint to Ms. Stephens's claimed expenses.  As the Court has earlier explained, and as Ms. Stephens has not introduced new facts to controvert, if the cost and expense regarding the disciplinary proceedings "led directly to [Great American's] exposure with respect to the [proceedings], it borders on the surreal to think that the nondisclosure [was] immaterial." *TIG Ins. Co. v. Reliable Rsch. Co.*, 334 F.3d 630, 637 (7th Cir. 2003) (affirming district court's granting rescission of insurance contract where insured materially misrepresented whether Plaintiff was subject to an injunction exposing insurer to costs); *Foster v. Auto-Owners Ins., Co.*, 703 N.E.2d 657, 661 (Ind. 1998) (holding that where the risk was "precisely the subject of the omission on [the] application[], the omission plainly affected the risk for which [the insured] now seeks coverage.").  [*See generally* Filing No. 92 at 7.]  Regardless of Ms. Stephens' intent, which Indiana law disregards, she made a material misrepresentation.  Such a finding would mean that even if Ms. Stephens provided proper notice, and even if the proceedings before the REAB amounted to a covered claim for limited fees incurred in defending a "disciplinary action," her misrepresentation would entitle Great American to rescind the policy.

At this juncture of the analysis, Great American would be entitled to rescission unless some kind of waiver or estoppel prevented Great American from invoking that right, as Plaintiffs seem to suggest.  The issue of waiver and estoppel is what the Court turns to next.

2.      *Waiver and Estoppel*

Ms. Stephens argues in her supplemental briefing that because Great American wrongfully "denied coverage," it is estopped from and has "waived its defenses," "including misrepresentation." [Filing No. 94 at 8.] Ms. Stephens argues that "when an insurer induces the insured to effect self-help to protect [her]self, it cannot then hide behind the language of the policy to avoid its duty to defend or insure." [Filing No. 94 at 9 (citing *Fed. Ins. Co. v. Stroh Brewing Co.*, 127 F.3d 563, 571 (7th Cir. 1997)).] Ms. Stephens states that estoppel "extend[s] to practically every ground upon which an insurer may deny liability," including raising the defense of misrepresentation. [Filing No. 94 at 10.] According to Ms. Stephens, "Great American gambled on denying coverage based on a claim of late notice, and lost." [Filing No. 94 at 10.]

Great American argues in its Reply in Support of Supplemental Brief that "it did not waive its coverage defenses." [Filing No. 97 at 4.] Great American states that "waiver is an intentional relinquishment of a known right and is a voluntary act." [Filing No. 97 at 4.] Great American states that contrary to such an intentional relinquishment, "as soon as [it] became aware of [Ms.] Stephens' false statement in the application, it sought to amend its counterclaim to allege the material misrepresentation precluded coverage." [Filing No. 97 at 4.] Great American concludes to state that "[t]here is simply no admissible evidence (or even allegations) that Great American 'intentionally relinquished' or waived any known rights or coverage defenses." [Filing No. 97 at 4-5.]

The Indiana Supreme Court has explained the concepts of waiver and estoppel in the realm of insurance:

> Technically, there is a distinction between "waiver" and "estoppel." A waiver is an intentional relinquishment of a known right and is a voluntary act, while the elements of estoppel are the misleading of a party entitled to rely on the acts or statements in question and a consequent change of position to his detriment. But in the law of insurance, the distinction between "estoppel" and "implied waiver" is

14

not easy to preserve, and, quite commonly, in insurance cases, the courts have found it unnecessary or inadvisable to make a distinction between them and have used the terms interchangeably."

*Travelers Ins. Co. v. Eviston*, 37 N.E.2d 310, 314 (Ind. Ct. App. 1941).  Given the fact that the parties actually litigated and the Court expressly permitted Great American to file a Counterclaim and affirmative defense of misrepresentation and rescission, finding it was proper under the circumstances, it cannot be said that Great American intentionally relinquished its right to raise those arguments.  [*See* Filing No. 71 (Order Granting Great American's Motion for Leave to File a Counter-Complaint regarding misrepresentation).]  The Court thus focuses on the concept of estoppel and implied waiver.

As to estoppel, "[a]n insurer, having knowledge its insured has been sued, may not close its eyes to the underlying litigation, force the insured to face the risk of litigation without the benefit of knowing whether the insurer intends to defend or to deny coverage, and then raise policy defenses for the first time after judgment has been entered against the insured." *Progressive Cas. Ins. Co. v. Morris*, 603 N.E.2d 1380, 1383 (Ind. Ct. App. 1992).  "[W]hen an insurer induces the insured to effect self-help to protect himself, it cannot then hide behind the language of the insurance policy to avoid its duty to defend or insure." *Stroh Brewing Co.*, 127 F.3d 563, 571 (7th Cir. 1997) (citing *Indiana Ins. Co. v. Ivetich*, 445 N.E.2d 110, 112 (Ind. Ct. App. 1983) and *Am. Fam. Mut. Ins. Co. v. Kivela*, 408 N.E.2d 805 (Ind. Ct. App. 1980)).  That is, "[w]hen a liability insurer unjustifiably refuses to defend a suit against its insured, the insurer will be estopped from later asserting policy defenses to coverage." 46 C.J.S. Insurance § 1202.  "Whether an insurer is estopped to disclaim liability under the insurance policy is generally a question for the factfinder unless the facts giving rise to the estoppel are undisputed and susceptible of only one interpretation." *Emps. Ins. of Wausau v. Recticel Foam Corp.*, 716 N.E.2d 1015, 1028 (Ind. Ct.

App. 1999).   The question of whether Great American is estopped thus depends on whether it breached its duty to defend.

"An insurer's duty to defend is determined solely by the nature of the complaint." *USAA v. Caplin*, 656 N.E.2d 1159, 1162 (Ind. Ct. App 1995).   "'[N]ature of the complaint' might refer to the allegations of the complaint plus additional facts known or reasonably ascertainable by the insurer." *Hayes Lemmerz Int'l, Inc. v. Ace Am. Ins. Co.*, 619 F.3d 777, 781 (7th Cir. 2010).   "[W]hen the nature of the claim is obviously not covered by the policy of insurance, there is no duty to defend." *Transamerica Ins. Servs. v. Kopko*, 570 N.E.2d 1283, 1285 (Ind. 1991).   "[W]hile Indiana's courts may use differing language to describe that standard, . . . there is essentially only one standard—that the allegations of the complaint, including the facts alleged, give rise to a duty to defend whenever, if proved true, coverage would attach." *Stroh Brewing Co.,* 127 F.3d 563, 566 (7th Cir.1997).   The nature of the complaint is then juxtaposed with the duty to defend in the insurance contract.   "An insurance company," "by its contract," "is free to determine . . . what risks it is undertaking to insure." *Cincinnati Ins. Co. v. Mallon*, 409 N.E.2d 1100, 1103 (Ind. Ct. App. 1980).   So generally, "insurance companies have, in the absence of statutory provisions to the contrary, the same right as individuals to limit their liability and to impose whatever conditions they please upon their obligations, not inconsistent with public policy.   Consequently, if such exceptions, exclusions and limitations are plainly expressed, insurers are entitled to have them construed and enforced as expressed." *Id.*

The Court returns to the original reasons that Great American declined to defend Ms. Stephens in the REAB action.   It is true that Great American declined coverage because notice was not "first received by the Insured and reported in writing . . . during the Policy Period." [Filing No. 53-8 at 2.]   It is also true that Great American stated that because the REAB proceedings were

a "Disciplinary Action," they did not amount to a "claim." [Filing No. 53-8 at 4.]  Great American justified that rationale with the Policy's definition of "Disciplinary Action," which is any non-criminal proceeding "before any state licensing board . . . regulating professional conduct, alleging misconduct in providing Real Estate Professional Services." [Filing No. 53-8 at 4.]  For such Disciplinary Actions, the Policy provides the following exclusion:  Great American "shall not be obligated" "to pay any fine, penalty or award resulting from any Disciplinary Action" nor "to defend any Disciplinary Action." [Filing No. 53-8 at 4.]

Ms. Stephens sought Policy coverage for defending herself against allegations of incompetence in proceedings before the REAB, a state licensing board empowered by statute to impose "disciplinary sanctions," Ind. Code §§ 25-1-11-12, 13.  Those proceedings clearly amounted to the Policy's definition of "Disciplinary Action."  Thus, far from breaching its duty to defend, Great American had no duty to defend Ms. Stephens during the REAB proceedings at all.  Far from surprising Ms. Stephens, Great American explained its Policy on Disciplinary Actions in its original letter denying coverage.  [Filing No. 53-8 at 4.]  And far from improperly "induc[ing]" Ms. Stephens to defend herself, Ivetich, 445 N.E.2d at 112, Great American merely stood on its right to rely on its own policy exclusions.  See Progressive Se. Ins. Co. v. Smith, 140 N.E.3d 292, 297-99 (Ind. Ct. App. 2020) (granting declaratory judgment in favor of insurer where under the claim's circumstances, the policy stated that the "duty to defend" "will not apply").  Whether or not the proceedings before REAB amounted to a "claim," and whether or not Ms. Stephens provided proper notice, Great American did not breach its duty to defend, was specifically

permitted by the Court to allege misrepresentation, and is hence not estopped from invoking the argument of Ms. Stephens's material misrepresentation in order to rescind the policy.[1]

The Court holds that Ms. Stephens misrepresented material answers to her insurance applications, that the proceedings before the REAB were a "Disciplinary Action," and that because Great American did not breach its duty to defend, it was not estopped from raising the affirmative defense of misrepresentation.  Great American Assurance's Cross-Motion for Summary Judgment, [64], is **GRANTED**.  Conversely, Ms. Stephens's Motion for Summary Judgment, [53], is **DENIED**.

3. *Refund of Premiums*

"It is the law in Indiana that in all cases of rescission of a contract the party rescinding must restore or offer to restore everything of value which he has received under the contract." *Prudential Ins. Co. of Am. v. Smith*, 108 N.E.2d 61, 65 (Ind. 1952).  "It is further the law that where a tender back is necessary in order to effect a rescission of a contract of insurance, such tender to be sufficient must first be offered to the beneficiary named in the policy." *Id.*  This is to say, when an insurance contract is rescinded, the policyholder receives a refund of her premiums.  At the same time, Great American has already offered to refund Ms. Stephens's premiums, [Filing No. 93-1 at 4], which are valued at $1,109.00.  [Filing No. 64-1 at 2.]  Great American is **ORDERED** to return $1,109.00 in premiums to Accent Consulting Group, Inc.

---

[1] To the extent that Ms. Stephens is arguing that Great American has impermissibly changed positions in this litigation itself, Federal Rule of Civil Procedure 8(d) permits pleading in the alternative.  It is also persuasive that the Indiana Supreme Court decided a question of late notice and misrepresentation as alternative "independent ground[s]." *Guzorek*, 690 N.E.2d at 670 (notice); *id.* at 671 (misrepresentation); *see also Amerisure Ins. Co. v. Nat'l Sur. Corp.*, 695 F.3d 632, 636 (7th Cir. 2012) (holding that "[t]o require a potential defendant to commit irrevocably to defenses before he is sued would be unreasonable to the point of absurdity.")

### 4.    *Other Issues*

In the parties' original briefing regarding the Cross-Motions for Summary Judgment, the parties disputed whether the disciplinary proceedings amounted to a "claim" under the Policy, [Filing No. 67 at 15], whether Ms. Stephens provided proper notice to Great American to trigger Policy coverage, [Filing No. 67 at 18], whether the Policy uses the correct definition of "Disciplinary Action," [Filing No. 53 at 15], and whether Great American engaged in bad faith, [Filing No. 53 at 21.] The Court need not address these issues. There is no point in interpreting a rescinded Policy.

In any event, the Court re-emphasizes Ms. Stephens's delay and lack of diligence in the Court's proceedings. As the Court explained in deciding the Motion to Strike Expert Testimony, *supra*, Ms. Stephens did not file any response to Great American's Cross-Motion for Summary Judgment, which contains the motion to strike the expert testimony. According to Great American, Ms. Stephens's counsel specifically "advised the Court that [her] decision not to file any response was intentional and that [she] did not intend on opposing Great American's" Cross Motion for Summary Judgment, nor did she "intend on filing any reply in support of [her] Motion for Summary Judgment." [Filing No. 80 at 1.] Well after the deadline, Ms. Stephens filed an unauthorized "sur-reply." [Filing No. 82.] The sur-reply belatedly argues that Great American has not demonstrated prejudice from allegedly late notice of her insurance claim. [Filing No. 82 at 2-3.] Having failed to timely respond and otherwise abide by the Court's procedures, Ms. Stephens's arguments in opposition to the remaining issues are waived. And Great American would be alternatively entitled to summary judgment on its original Cross-Motion for Summary Judgement.

### III.
#### CONCLUSION

Having considered the foregoing action, the Court makes the following rulings:

- Ms. Stephens's Motion for Summary Judgment, [53] is **DENIED.**

- Great American's Motion to Strike the Expert Opinion of Professor William Warfel, [Filing No. 67], is **GRANTED**.

- Great American's Cross-Motion for Summary Judgment, [64] is **GRANTED and the policy is rescinded**.

- Great American is **ORDERED** to return $1,109.00 in premiums to Accent Consulting Group, Inc.  Great American shall file a report when the premium for the rescinded policy has been paid to Ms. Stephens.

Once the report of the premium return is made, final judgment shall issue.


Date: 5/20/2024

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana



Distribution:

Kimberly E. Blair
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
kimberly.blair@wilsonelser.com

Michael A. Kreppein
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
michael.kreppein@wilsonelser.com

Rafael Ramirez
RAMIREZ LAW OFFICE, P.C.
rafael@ramirez-law.com

Joseph J. Stafford
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
joseph.stafford@wilsonelser.com